Ahren A. Tiller Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

Abbas Kazerounian, Esq. [SBN: 249203]
Kazerouni Law Group, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATEY HUNTLEY and GARY JACKSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ROSEBUD ECONOMIC DEVELOPMENT CORPORATION; ROSEBUD LENDING LZO d/b/a ZOCALOANS; FINTECH FINANCIAL, LLC; TACTICAL MARKETING PARTNERS, LLC; AND 777 PARTNERS, LLC,<br><br>Defendants. | Case No.: '22CV1172 L    MDD<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962);**<br>2. **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. § 227, *ET. SEQ.*)**<br>3. **VIOLATIONS OF THE UNFAIR COMPETITION LAW (CAL. BUS. & PROF. C. §§ 17200, *ET. SEQ.*;**<br>4. **VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. C. §§ 1788, *et. seq.*)**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.  KATEY HUNTLEY ("HUNTLEY") and GARY JACKSON ("JACKSON") (hereinafter jointly referred to as "Plaintiffs"), by and through her Counsel of record, bring this action against ROSEBUD ECONOMIC DEVELOPMENT CORPORATION ("REDC"); ROSEBUD LENDING LZO d/b/a ZOCALOANS ("ZOCA"); FINTECH FINANCIAL, LLC ("FINTECH"); TACTICAL MARKETING PARTNERS, LLC ("TACTICAL"); AND 777 PARTNERS, LLC ("777") (collectively referred to as "Defendants") for violations of (1) The Racketeer Influenced And Corrupt Organizations Act (18 U.S.C. § 1962); (2) The Telephone Consumer Protection Act (47 U.S.C. §§ 227, *et seq*.); (3) The California Unfair Competition Law (Cal. Bus. & Prof. C. §§ 17200 *et. seq.*); and (4) The Rosenthal Fair Debt Collection Practices Act (Cal Civ. C. §§ 1788, *et. seq.*).

2.  The Defendants have all engaged in a criminal conspiracy wherein they have acted in concert with one another to issue unlawful and usurious short-term unsecured consumer loans at interest rates in excess of their legal limit, and systematically withdraw payments from consumers' bank accounts without permission to do so.

3.  Defendants all have formed sham tribal corporate entities, wherein Defendant REDC functions as a holding company for multiple subsidiary entities, including Defendants ZOCA and FINTECH. The structure of REDC and its subsidiaries are part of a "rent a tribe" scheme wherein Defendants all conspired to use the legal status of the Rosebud Sioux Tribe of the Rosebud Indian Reservation ("Tribe") to shield themselves from liability for violating federal and state law.

4.  Plaintiffs make the allegations contained herein on information and belief, except as to those allegations regarding herself, which are made based upon her personal knowledge.

5.  The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and

owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty, and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.[1]

6. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*., in response to complaints about abusive telemarketing practices.

7. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and it made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.   Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12.

8. In 2015, the Federal Trade Commission ("FCC") noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

---

[1] Cal. Civ. Code §§ 1788.1 (a)-(b)

*HUNTLEY, ET AL. v. ROSEBUD ECONOMIC DEVELOPMENT CORP. ET. AL. - Complaint for Damages*

9.  The transmission of an unsolicited calls and voice messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

10. This action is based on Defendants' violations of several federal statutes over which the Court has original jurisdiction, including but not limited to 28 U.S.C. § 1331, as the unlawful violations of The Racketeer Influenced and Corrupt Organizations Act ("RICO") and 47 U.S.C. § 227, *et seq*, the Telephone Consumer Protection Act ("TCPA"), both alleging herein federal question.

11. Further, the Court has supplemental jurisdiction over Plaintiffs' California causes of action, pursuant to 28 U.S.C. § 1367(a), as Plaintiffs' California state law claims are so related to Plaintiffs' federal claims in this action, that they form part of the same case or controversy.

12. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2) and 18 U.S.C. § 1965(a), because all or some of the unlawful practices and violations of law alleged herein occurred and are occurring in the County of San Diego, California.  Furthermore, Defendants regularly conduct business within the State of California, San Diego and San Bernardino Counties, and Plaintiffs reside in those respective counties.

## PARTIES

13. Plaintiff HUNTLEY is, and was at all times mentioned herein, a natural person residing in the County of San Diego, in the State of California.

14. Plaintiff JACKSON is, and was at all times mentioned herein, a natural person residing in the County of San Bernardino, in the State of California.

15. Defendant REDC purports to be a tribal corporation formed under the laws of the Rosebud Sioux Tribe of the Rosebud Indian Reservation.

16. Defendant ZOCA purports to be a wholly-owned subsidiary of Defendant REDC.

17. Defendant FINTECH purports to be a wholly-owned subsidiary of Defendant REDC.

18. Defendant 777 is a non-tribal Delaware Corporation whose primary place of business is Miami, FL.

19. Defendant TACTICAL is also a non-tribal Delaware Corporation and a subsidiary entity of Defendant 777, whose primary place of business is Miami, FL.

20. Defendant FINTECH is a non-tribal Delaware corporation, whose sole owning member is the Rosebud Sioux Tribe.  In reality, the Tribe "owns" Defendant FINTECH in name only, and instead FINTECH is entirely operated by the non-tribal Co-Defendants as part of their illegal lending scheme.

21. Although Defendant ZOCA claims to be a tribal corporation, they are in fact a sham entity used by Defendants as part of a "rent-a-tribe" scheme.

22. Defendant ZOCA is tribally-owned in name only.  The Rosebud Sioux Tribe does not perform any part of ZOCA's business other than receiving payments for use of its alleged status tribal corporation.

23. In actuality, Defendant ZOCA's entire business is run by Defendants 777 and TACTICAL, who operate their illegal payday lending scheme out of Miami, FL.

24. The sole role of the Rosebud Sioux Tribe in this scheme is to provide the false guise of a tribal corporation as a shield for the other Defendants' illegal payday lending scheme.

## GENERAL FACTUAL ALLEGATIONS

25. The facts alleged herein come from Plaintiffs' personal knowledge, Plaintiffs' research, and Plaintiffs' Counsel's investigation and research, taking into account that Defendants all intentionally obscure and conceal their actions to hide their criminal enterprise.

26. Defendant TACTICAL functions as the entity that obtains consumer credit reports on behalf of the conspiracy, and then provides that information to

Defendants ZOCA and 777.

27. Defendant 777 provides the employees and systems used to underwrite and approve the loans that are later ostensibly made by ZOCA.

28. Once Defendants TACTICAL and 777 have underwritten a proposed loan, they transmit that information to Defendant ZOCA where Defendant ZOCA then "funds" the loan.  This is in name only, and intentionally designed to use ZOCA's status as a tribal entity to try to avoid liability for the scheme's unlawful lending practices. In actuality, Defendants TACTICAL and 777 have already approved the loans and merely tell Defendant ZOCA who is "approved."

29. Defendants TACTICAL, FINTECH and 777 provide all the capital to "fund" the loans to Defendants ZOCA and REDC.

30. All capital used for the lending scheme come from accounts held by Defendants TACTICAL, FINTECH, and 777, which are accounts that Defendants REDC and ZOCA have no access to or control to.

31. All policies, systems, procedures and decisions regarding business, loan funding and approval, are made solely by Defendants TACTICAL, 777, and FINTECH. Defendants REDC and ZOCA have zero actual control or operation of the illegal lending scheme.

32. Defendants intentionally and falsely advertise that ZOCA is wholly-owned by REDC, an alleged tribal corporation of a tribal government under the law of the Rosebud Sioux Tribe of the Rosebud Indian Reservation, when in reality they are run and controlled entirely by non-tribal members who reap virtually all of the proceeds from the usurious and unlawful loans.

33. Cal. Civ. C. § 22303 prohibits unsecured loans under $2,500.00 that exceed the sum of:

  (a) Two and one–half percent per month on that part of the unpaid principal balance of any loan up to, including, but not in excess of two hundred twenty–five dollars ($225).

(b) Two percent per month on that portion of the unpaid principal balance in excess of two hundred twenty–five dollars ($225) up to, including, but not in excess of nine hundred dollars ($900).

(c) One and one–half percent per month on that part of the unpaid principal balance in excess of nine hundred dollars ($900) up to, including, but not in excess of one thousand six hundred fifty dollars ($1,650).

(d) One percent per month on any remainder of such unpaid balance in excess of one thousand six hundred fifty dollars ($1,650).

34. Defendants, through their illegal scheme, make loans at interest rates up to 736.38%, in violation of Cal. Fin. C. § 22303.

35. Cal. Civ. C. § 1670.5 codified that unconscionable contracts or unconscionable clauses in any contract allow a Court to refuse to enforce the entire contract or any unconscionable portion.

## ALLEGATIONS SPECIFIC TO KATIE HUNTLEY

36. On November 29, 2019, HUNTLEY took out an unsecured consumer loan ostensibly from Defendant ZOCA.

37. Defendant ZOCA lent HUNTLEY a principal amount of $1,000.00 at an interest rate of 736.38% APR, in violation of Cal. Fin. C. § 22303.

38. Defendant ZOCA required HUNTLEY to repay $3,604.96 for the $1,000.00 loan, in violation of Cal. Fin. C. § 22303.  HUNTLEY made payments toward the debt, incurring actual financial harm as a result of Defendants' unlawful conduct.

39. Despite stating that the loan was originated, funded and serviced by Defendant ZOCA, it was truly originated, funded and serviced by the not-tribal Defendants TACTICAL, 777, and FINTECH.

40. Defendants REDC and ZOCA's only actual involvement was allowing the non-tribal Defendants to use their name and alleged status as a tribal corporation, to allow Defendants to usurp California's lending laws.

41. Cal. Fin. C. § 22100 prohibits any person from engaging in the business of a finance lender or broker without obtaining a license from the CA Commissioner of Business Oversight.

42. The loans issued by Defendants are "consumer loans" as that term is defined in Cal Fin. C. § 22203.

43. Pursuant to Cal. Fin. C. § 22001(b) and (c), Cal. Fin. C. § 22303 applies to the loans issued by Defendants.

44. Although HUNTLEY made payments to the loan account, she eventually was unable to maintain regular payments and went into default.  Once she did, agents and employees of Defendants called HUNTLEY multiple times per day to collect on their claim.

45. On October 6, 2021, Plaintiffs' Counsel sent a letter to Defendant ZOCA wherein Plaintiffs' Counsel provided HUNTLEY's name, the last 4 digits of her social security number, and expressly stated that Defendant ZOCA was forbidden from contacting HUNTLEY as she was represented by Counsel. The October 6, 2021, Letter additionally expressly revoked any alleged consent to contact HUNTLEY using an ATDS or pre-recorded voice message.  The Letter was sent to ZOCA's address listed on their website as the address for written correspondence.

46. On November 3, 2021, HUNTLEY sent an email to support@zocaloans.com wherein the stated her name, last four digits of her social security number, and provided her cellular phone and instructed ZOCA that she was revoking any alleged consent to contact her via text message to her cellular phone or via the use of any ATDS or similar to her cellular phone.

47. Despite receipt of the October 6, 2021, letter, and November 3, 2021, email, agents for Defendants have continued to call HUNTLEY on her cellular phone, including via the use of a pre-recorded voice message and often calling in rapid succession without HUNTLEY's consent.

48. Defendants' unlawful debit and unlawful collection practices initiated against HUNTLEY are representatives of the acts Defendants commit against all members of the proposed class.

**ALLEGATIONS SPECIFIC TO GARY JACKSON**

49. On or about August 25, 2021, JACKSON took out an unsecured consumer loan ostensibly from Defendant ZOCA.

50. Defendant ZOCA lent JACKSON a principal amount of $700.00 at an interest rate of 492.56% APR, in violation of Cal. Fin. C. § 22303.

51. Defendant ZOCA required JACKSON to repay $2,047.48 by March 11, 2022, for the $700.00 loan, in violation of Cal. Fin. C. § 22303.  JACKSON made payments toward the debt, incurring actual financial harm as a result of Defendants' unlawful conduct.

52. Despite stating that the loan was originated, funded and serviced by Defendant ZOCA, it was truly originated, funded and serviced by the not-tribal Defendants TACTICAL, 777, and FINTECH.

53. Defendants REDC and ZOCA's only actual involvement was allowing the non-tribal Defendants to use their name and alleged status as a tribal corporation, to allow Defendants to usurp California's lending laws.

54. Cal. Fin. C. § 22100 prohibits any person from engaging in the business of a finance lender or broker without obtaining a license from the CA Commissioner of Business Oversight.

55. The loans issued by Defendants are "consumer loans" as that term is defined in Cal Fin. C. § 22203.

56. Pursuant to Cal. Fin. C. § 22001(b) and (c), Cal. Fin. C. § 22303 applies to the loans issued by Defendants.

57. Although JACKSON made payments to the loan account, he eventually was unable to maintain regular payments and went into default.

58. After allegedly defaulting on his loan, JACKSON received several calls to his cellular telephone (number ending in 9152) from Zoca or its agent(s), using an artificial or prerecorded voice, stating: "Hi, this is Zoca calling regarding an urgent update to your account. I'd like to discuss options that are available to assist you with this time sensitive issue. It is imperative that you please contact me before 8 p.m. Eastern Standard Time to discuss these options."

59. Zoca's contract with JACKSON notably states that Zoca uses "automated telephone dialing or text messaging systems, calls with prerecorded messages or artificial voices and electronic mail to provide messages . . . about Payment Due Dates, missed payments, options to amend this Agreement and other important information."

60. The same prerecorded voice further instructed JACKSON to call Zoca back at 888-710-0201.

61. JACKSON received the above message from the following three phone numbers: 888-980-1532, 888-710-0201, and 213-347-9152.

62. JACKSON estimates that he receives approximately two calls on any given day. For instance, on July 1, 2022, JACKSON received calls at 8:05 a.m. and 2:01 p.m. PST, respectively.

63. Despite having revoked his consent to receive calls regarding his account at approximately 10:40 a.m. on July 20, 2022, by sending an email to support@zocaloans.com (pursuant to the terms of his agreement with Zoca), JACKSON continues to receive said calls to this day. For instance, on July 20, 2022, at approximately 12:40 p.m.—two hours after revoking his consent in writing—JACKSON received a call to his cellular telephone from Zoca, reciting the same message as before.

//

//

# CLASS ALLEGATIONS

64. Plaintiffs reallege and incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

65. Plaintiffs are representative of the ongoing and repeated acts of Defendants' criminal enterprise.

66. Defendants, in the 48 months preceding the filing of this Complaint, through their criminal enterprise, have conspired to issue usurious and unlawful loans tens of thousands of times.

67. Plaintiffs and the members of the Class have all suffered an injury in fact as a result of the Defendant's unlawful conduct

68. The "Class Period" means 48 months prior to the filing of the Complaint in this action.

69. Plaintiffs bring this lawsuit on behalf of herself and other similarly situated individuals under Rule 23(b)(1), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedures.

70. Subject to additional information obtained through further investigation and/or discovery, the proposed class ("APR Class") consists of:

> All persons in the United States of America who obtained a loan from Defendants within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loans exceeded 90% percent.

71. Additionally, the proposed TCPA Class ("TCPA Class") consists of:

> All persons throughout the United States (1) to whom Defendants delivered or caused to be delivered, a loyalty text message, (2) directed to a number assigned to a cellular telephone service, (3) using the same equipment used to contact Plaintiffs or with an artificial or prerecorded voice, (4) within four years preceding the date of this Complaint.

72. Additionally, the proposed California APR Sub-Class ("APR Sub-Class") consists of:

> All persons in the State of California who obtained a loan from Defendants within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loans exceeded 36% percent.

73. Additionally, the proposed California UCL Sub-Class ("UCL Sub-Class") consists of:

> All persons in the State of California who obtained a loan from Defendants within the 48 months preceding the filing of this Complaint, wherein the annual percentage rate (APR) of interest on said loans exceeded 36% percent.

74. Further, the proposed California RFDCPA Sub-Class ("RFDCPA Sub-Class") consists of:

> (i) All persons with addresses within the State of California; (ii) from whom Defendants or their agents (iii) collected or sought to collect on a consumer debt (iv) within one year prior to the filing of this Complaint.

75. The proposed Class and Sub-Classes are collectively sometimes referred to as the "Classes".

76. Class certification requirements are met as follows:

**A. *Ascertainability*.** The members of the Class are readily ascertainable from Defendants' records of loans issued within the relevant time period, and the specific terms and parties identified therein.

**B. *Numerosity*.** The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs and all those similarly situated are informed and believe, and on that basis allege, that the proposed Classes consists of tens of thousands of members or more.

**C. *Existence and Predominance of Common Questions of Law and Fact***.

Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual Class Members.  All members of the Classes have been subject to the same conduct and their claims are based on the widespread dissemination of the unlawful, deceptive, and pernicious conduct by Defendant.  The common legal and factual questions include, but are not limited to, the following:

   i.  the nature, scope, and operations of the wrongful practices of Defendants;

  ii.  whether Defendants engaged in a course of unfair, unlawful, fraudulent and/or pernicious conduct in its lending and loan practices.

 iii.  whether Defendants knew or should have known that its business practices were unfair, and/or unlawful;

  iv.  whether Defendants owed a duty of care to Plaintiffs and the Classes;

   v.  whether Defendants' loan products' interest rates were so high that they were unreasonable and/or violated California law and/or public policy.

  vi.  Whether Defendants conspired together in an unlawful criminal enterprise;

 vii.  whether Defendants harmed Plaintiffs and the Classes; and

viii.  whether Defendants were unjustly enriched by its unlawful and unfair business practices.

**D. *Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Class in that Plaintiffs are members of the Classes that Plaintiffs seek to represent.  Plaintiffs, like members of the proposed Classes, were induced by Defendants to take out a loan with unfair, unlawful, and objectively oppressive terms.

**E. *Adequacy of Representation***.  Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel experienced in consumer protection law, including class actions.  Plaintiffs

have no adverse or antagonistic interests to those of the Classes and will fairly and adequately protect the interests of the Classes. Plaintiffs' attorneys are aware of no interests adverse or antagonistic to those of Plaintiffs and the proposed Classes.

**F.** *Superiority*. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individualized litigation would create the danger of inconsistent and/or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the Courts and the issues raised by this action. The damages or other financial detriment suffered by individual Class and Sub-Class Members may be relatively small compared to the burden and expense that would be entailed by individual litigation of the claims against the Defendant. The injury suffered by each individual member of the proposed class is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the proposed Classes to individually redress effectively the wrongs to them. Even if the members of the proposed Classes could afford such litigation, the Court system could not. Individualized litigation increases the delay and expense to all parties, and the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, the economy of scale, and comprehensive supervision by a single court.

Therefore, a class action is maintainable pursuant to Fed. R. Civ. P. 23(b)(3).

77. Unless the Class and/or Sub-Classes are certified, Defendants will continue their unlawful, unfair, and predatory lending practices as described herein. If the Class and/or Sub-Classes are certified, the harms to the public and the Classes can be easily prevented or rectified.

78.  Furthermore, Defendants have acted or refused to act on grounds that are generally applicable to the Classes so that declaratory and injunctive relief is appropriate to the Class as a whole, making class certification appropriate pursuant to Fed R. Civ. P. 23(b)(2).

# I.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. § 1962).

79.  Plaintiffs reallege and incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

80.  Defendants are all corporate entities and persons as defined by 18 U.S.C. § 1961(3) and within the meaning of 18 U.S.C. § 1962(c).

81. 18 U.S.C. §1961(6) defines an "unlawful debt" as any debt with is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury and was incurred in connection with the business of lending money at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate

82. 18 U.S.C. § 1962(a) includes as a prohibited activity any person who receives income derived directly or indirectly from a pattern of racketeering activity, or through collection of an unlawful debt…"

83. 18 U.S.C. § 1962(c) prohibits any person associated with any enterprise from conducting, participating directly or indirectly, in the conduct of the enterprise's affairs through collection of unlawful debt.

84.  As described in detail herein, Defendants all function as a group of individuals associated in fact, although they are not a single legal entity.  Together, they work toward a common goal of misleading the public and issuing usurious consumer loans that violate applicable lending laws.

85. As described in detail herein, Defendants are all part of an enterprise that conspires together to lend money at usurious interest rates that exceed twice the rate prohibited by California usury laws.

86. Through the conduct described in detail herein, Defendants all, have caused actual harm to Plaintiffs and all those similarly situated by their violations of 18 U.S.C. § 1962(c).

## II.

## SECOND CAUSE OF ACTION

## Violations of the Telephone Consumer Protection Act ("TCPA")

## (47 U.S.C. § 227, *et seq*.)

87. Plaintiffs reallege and incorporate by reference all preceding paragraphs, inclusive, as if fully set forth herein.

88. Through the letter from Plaintiffs' counsel, and her email, Plaintiffs revoked any consent that Defendants or their agents may have had to call Plaintiffs on their cellular telephones via the use of an automatic telephone dialing system ("ATDS") or with an artificial or prerecorded voice message.

89. Upon information and belief this telephone dialing equipment used by DSNB, or its agent, has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

90. Upon information and belief, this telephone dialing equipment also has the capacity to dial telephone numbers stored in a database or as a list, without human intervention.

91. After revoking any consent to be contacted on Plaintiffs' cellular telephones, Defendants or their agents continued to Plaintiffs for several months, often multiple times a day in rapid succession.

92. The foregoing acts of Defendants or their agents constitutes numerous and multiple negligent violations of the TCPA, including but not limited to each and

every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

93. As a result of Defendants' negligent violations of 47 U.S.C. § 227, *et. seq.*, Plaintiffs are each entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94. As a result of Defendants' knowing or willful violations of 47 U.S.C. § 227, *et. seq.*, Plaintiffs are each entitled to an award of $1,500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3).

95. Plaintiffs are also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

# III.

## THIRD CAUSE OF ACTION

## FOR VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW
## (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)

96. Plaintiffs reallege and incorporate by reference all the above paragraphs of this Complaint as though fully stated herein.

97. Plaintiffs and Defendants are each "person(s)" as that term is defined by Cal. Bus. & Prof. C. § 17201. Cal. Bus & Prof. C. § 17204 authorizes a private right of action on both an individual and representative basis.

98. Cal. Bus. & Prof. C. § 17204, a provision of the Unfair Competition Law (B & P C §§ 17200–17209), confers standing to prosecute actions for relief not only on the public officials named therein but on private individuals, i.e., "any person acting for the interests of itself, its members or the general public." Thus, a private plaintiff who has suffered a financial injury may sue to obtain relief for others.

99. "Unfair competition" is defined by Bus. & Prof. Code § 17200 as encompassing several types of business "wrongs," including: (1) an "unlawful" business act or practice, (2) an "unfair" business act or practice, (3) a "fraudulent" business act or practice, and (4) "unfair, deceptive, untrue or misleading advertising." The

definitions in § 17200 are drafted in the disjunctive, meaning that each of these "wrongs" operates independently from the others.

### A. *"Unlawful" Prong*

100.    By knowingly and intentionally issuing loans at interest rates that are unconscionable, and objectively unreasonable, Defendants have routinely engaged in unlawful business practices.

101.    The lending practices described herein by Defendants violate Cal. Fin. C. § 22303.

102.    Because Defendants' illegal scheme entailed violations of both Cal. Fin. C. § 22303, Defendants violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq*., which provides a cause of action for an "unlawful" business act or practice perpetrated on consumers.

103.    Defendants violated Cal. Bus. & Prof. Code §§17200, *et. seq.* through unfair, unlawful, and deceptive business practices.

104.    Cal. Bus. & Prof. Code §§ 17200 *et seq*., provides for private cause of action for an "unlawful" business acts or practices perpetrated on consumers.

105.    Defendants had other reasonably available alternatives to further any legitimate business interests, other than the conduct described herein, such as continuing their unlawful conspiracy to provide loans to consumers at unlawful and usurious interest rates and avoid regulatory oversight.

106.    Plaintiffs suffered an actual monetary financial injury in that their payments made to Defendants were for amounts much higher than they would have been, but for Defendants' unlawful usurious interest rates charged to Plaintiffs.

107.    Plaintiffs reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

## B. *"Unfair" Prong*

108.    Defendants' actions and representations constitute an "unfair" business act or practice under § 17200 in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

109.    Without limitation, the business practices describe herein are "unfair" and shock the conscience, because they offend established public policy, violate California statutory protections, and are objectively immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers in that Defendants' conduct caused Plaintiffs and the Class Members to incur debts as a result of an unlawfully charged interest rate.

110.    At a date presently unknown to Plaintiffs, but at least four years prior to the filing of this action, and as set forth above, Defendants committed acts of unfair competition as defined by Cal. Bus. & Prof. Code §§ 17200, *et seq*., as described herein.

111.    Defendants could and should have furthered their legitimate business interests by not perpetrating fraud on the entire representative class of California borrowers by charging a usurious interest rate.

112.    Plaintiffs and other members of the Class could not have reasonably avoided the injury suffered by each of them.

113.    Plaintiffs reserves the right to allege further conduct that constitutes other unfair business acts or practices.  Such conduct is ongoing and continues to this date.

114.    Plaintiffs, and all those similarly situated, seek public injunctive relief to benefit the general public directly by bringing an end to Defendants' unfair business practices, which threaten future injury to the general public via

continuing to advertise and issue loans with unconscionably high unlawful interest rates.

115.    Specifically, Plaintiffs seek this Court grant an injunction requiring Defendants immediately cease entering into loan agreements with an APR in excess of those proscribed in Cal. Fin. C. § 22303, as well as enjoin Defendants from holding themselves out as a "sovereign tribal corporation" that is immune from state regulatory laws.  Such an injunction would benefit the public at large, because the public could then not be charged illegal and usurious interest rates by Defendants, nor fooled into believing they were having a loan issued by a legitimate tribal sanctioned entity.

## IV.

## FOURTH CAUSE OF ACTION

## Violations of the Rosenthal Fair Debt Collections Practices Act ("RFDCPA")

## (Cal. Civ. C. § 1788.17 & 15 U.S.C. § 1692e(2)(A))

116.    California Civil Code (Cal. Civ. Code) § 1788.17 provides in pertinent part that, "…every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."

117.    Plaintiffs are natural persons who reside in the State of California, from whom a debt collector collected and/or sought to collect a consumer debt which was alleged to be due and owing from Plaintiffs, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h).

118. Plaintiffs are informed and believe, and thereon allege, that Defendants, in the ordinary course of business, regularly, on behalf of themselves, engage in debt collection as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code §

1788.2(c), including but not limited to debit consumer's bank accounts on high interest consumer loans.

119. The alleged financial obligations of Plaintiffs on the loans were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code § 1788.2(d), and a "consumer debt" as that term is defined by California Civil Code § 1788.2(f).

120.   15 U.S.C. § 1682e(2)(A) states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:… (2) The false representation of—(A) the character, amount, or legal status of any debt;…"

121. Defendants collected, and sought to collect, an alleged consumer debt from Plaintiffs and the RFDCPA Sub-Class despite Defendants' false representations concerning the legal status of the alleged debt, as Plaintiffs and the RFDCPA Sub-Class do not owe the alleged debts because they constitute an "unlawful debt" pursuant to 18 U.S.C. §1961(6) and the excessive APR charged by Defendants on the loans is against California public policy.

122.   Also, Defendants debited the HUNTLEY's bank account in the amount of $95.21 even though she revoked preauthorization to the electronic funds transfer, thereby violating 15 U.S.C. § 1692f by engaging in unfair or unconscionable means to collect or attempt to collect the alleged debt.  This section is incorporated into the RFDCPA through Cal. Civ. Code § 1788.17. Thus, Defendants have also violated Cal. Civ. Code § 1788.17.

123.   As a result of each and every violation of the RFDCPA, Plaintiffs are entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal.

Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, having set forth the claims for relief against Defendants, and each of them, respectfully request this Court enter a Judgment against Defendants as follows:

a.  That this action be certified as a Class Action, Plaintiffs be appointed as the representatives of the Classes, and Plaintiffs' attorneys be appointed Class counsel;

b.  For all monetary gains, profits, and advantages for Defendants' acts of racketeering in violation of 18 U.S.C. §§ 1962 *et. seq.*;

c.  For all actual damages to Plaintiffs and all those similarly situated as a result of Defendants' unlawful conduct described herein;

d.  For treble damages pursuant to 18 U.S.C. § 1964(c);

e.  That Defendants' wrongful conduct alleged herein be adjudged and decreed to violate the consumer protection statutory claims asserted herein;

f.  Public injunctive relief through the role as a Private Attorney General, pursuant to Cal. Bus. & Prof. Code § 17204, permanently and immediately prohibiting Defendants from engaging in the unlawful conduct alleged herein, including but not limited to the inclusion in its loan agreements any provision having the effect of imposing an APR of over 36% on loans of more than $2,500, and 30 for loans from $250 - $2,500, and for Defendants to comply with corrective advertising regarding it's tribal status and legality of its interest rates;

g.  A temporary, preliminary and/or permanent order for injunctive relief requiring Defendants to: (i) cease charging an unlawful interest rate on its loans exceeding $2,500; (ii) and institute corrective advertising and providing written notice to the public of the unlawfully charged interest rate on prior loans;

h.  An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiffs and all members of

the Class and, also, to restore to Plaintiffs and members of the Classes all funds acquired by means of any act or practice declared by this court to be an unlawful, fraudulent, or unfair business act or practice, in violation of laws, statutes or regulations, or constituting unfair competition;

i. Distribution of any monies recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

j. An award of statutory damages under the TCPA and injunctive relief prohibiting further violations pursuant to 47 U.S.C. § 227(b)(3);

k. Actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b) to Plaintiffs and the RFDCPA Sub-Class; and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendants;

l. Reasonable attorneys' fees pursuant to, *inter alia*, California Code of Civil Procedure § 1021.5, Cal. Civ. Code § 1780, the UCL, and the common fund doctrine; and,

m. Prejudgment and post judgment interest;

n. For such other and further relief as the Court may deem just and proper.

Dated: August 10, 2022          By:     */s/ Ahren A. Tiller*
                                        Ahren A. Tiller, Esq.
                                        BLC Law Center, APC
                                        Attorneys for Plaintiffs
                                        KATEY HUNTLEY and GARY
                                        JACKSON and all those similarly
                                        situated.

## DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to and demands a trial by jury on all issues triable by a jury.

Dated: August 10, 2022          By:     /s/ Ahren A. Tiller
                                        Ahren A. Tiller, Esq.
                                        BLC Law Center, APC
                                        Attorneys for Plaintiffs


**Additional Plaintiff's Counsel**
Kazerouni Law Group, APC
Jason A. Ibey (SBN: 284607)
321 N Mall Drive, Suite R108
St. George, Utah 84790
Phone: 800-400-6808
Fax: 800-520-5523
Email: jason@kazlg.com