UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATEY HUNTLEY and GARY JACKSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br><br> ROSEBUD ECONOMIC DEVELOPMENT CORPORATION, et al. <br><br> Defendants. | Case No. 22-cv-1172-L-MDD <br><br> **ORDER:** <br> **(1) GRANTING DEFENDANT 777 PARTNERS MOTION TO COMPEL ARBITRATION [ECF NO. 8]; and** <br><br> **(2) DENYING DEFENDANT 777 PARTNER'S MOTION TO DISMISS AS MOOT [ECF NO. 9]** |

Pending before the Court are Defendant 777 Partner, LLC's ("777") Motion to Compel Arbitration [ECF No. 8] and Motion to Dismiss [ECF No. 9], in this putative class action. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Defendants Motion to Compel Arbitration and **DENIES** Defendant's Motion to Dismiss.

//

//

I.  BACKGROUND

On November 29, 2019, Plaintiff Katey Huntley ("Huntley") took out an unsecured consumer loan from Defendant Rosebud Lending LZO d/b/a ZocaLoans ("Zoca") with a principal amount of $1,000 and an interest rate of 736.38% APR. (Complaint at ¶¶ 36, 37). In August 2021, Plaintiff Gary Jackson ("Jackson") took out an unsecured consumer loan of $700 from Defendant Zoca at an interest rate of 492.56% APR. (Compl. at ¶¶ 49, 50). Plaintiffs made payments on the loans, but eventually were unable to make regular payments. (Compl. at ¶¶ 44, 57.) ZocaLoans thereafter made attempts to collect on the loans. (Compl. at ¶¶ 44-47, 57-63).

Plaintiffs assert that Zoca falsely advertises that it is wholly owned by Rosebud Economic Development Corporation ("REDC"), a tribal corporation incorporated under the laws of the Rosebud Sioux Tribe of the Rosebud Indian Reservation, but instead it is controlled entirely by non-tribal members. (Compl. at ¶¶ 32). Plaintiffs aver in the Complaint that Defendant Tactical Marketing Partners ("Tactical") a non-tribal entity, obtains consumer credit reports on behalf of the business endeavor and provides that information to Defendants Zoca and 777. (Compl. at ¶ 26). Non-tribal Defendant 777 purportedly provides the employees and systems that are utilized to underwrite and approve the loans made by Zoca. (Compl. at ¶27). Once the loans are approved, Tactical and 777 transmit the approval information to Zoca and Zoca then funds the loan. (Compl. at ¶ 28). However, Plaintiffs contend that the loans are funded from accounts held by non-tribal Defendants Tactical, Fintech Financial, LLC ("Fintech"), and 777 to which tribal Defendants REDC and Zoca have no access. (Compl. at ¶¶ 29, 30).   Plaintiffs claim that the funding of the loan by Zoca is in name only and is intended to use Zoca's status as a tribal entity to avoid liability for the schemes' unlawful lending practices. (Compl. at 28).

On August 22, 2022, Plaintiffs Huntley and Jackson filed this putative class action asserting violations of 18 U.S.C. § 1962, the Racketeer Influenced and Corrupt Organizations ACT ("RICO"); 47 U.S.C. § 227 the Telephone Consumer Protection Act; California's Unfair Competition Law, Cal. Bus. & Prof. C. §§ 17200 et seq; and

2

California's Rosenthal Fair Debt Collection Practices Act, Cal.Civ. C. §§ 1788, et seq. (Complaint [ECF No. 1.])

On November 17, 2022, Defendant 777 Partners, LLC, filed the present Motion to Compel Arbitration (Mot. Compel [ECF No. 8]) and Motion to Dismiss (MTD [ECF No. 9.]) On January 6, 2023, Plaintiffs filed Oppositions to the Motion to Compel Arbitration (Oppo. [ECF No. 13]) and Motion to Dismiss (MTD Oppo. [ECF No. 14.]) On January 20, 2023, Defendant 777 Partners filed a Reply to the Motion to Compel (Reply [ECF No. 17) and a Reply to the Motion to Dismiss (MTD Reply [ECF No. 18.])

## II.   LEGAL STANDARD- MOTION TO COMPEL ARBITRATION

Arbitration clauses are governed by the Federal Arbitration Act, 9 U.S.C. §2 et seq. ("FAA") and California contract law. Under the Federal Arbitration Act ("FAA"):

> [a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The party seeking to compel arbitration under the FAA has the burden to show "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Property Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015). "The FAA 'mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed'." *Kilgore v. KeyBank N.A.,* 718 F.3d 1052, 1058 (9th Cir. 2013) (emphasis in original) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). "As federal substantive law, the FAA preempts contrary state law." *Mortensen v. Bresnan Comm'cns,* LLC, 722 F.3d 1151, 1158 (9th Cir. 2013). The burden of proving that the arbitration agreement cannot be enforced is on the party resisting arbitration. *Green Tree Fin. Corp. - Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

"There are two types of validity challenges under § 2 [of the FAA]: 'One type challenges specifically the validity of the agreement to arbitrate,' and '[t]he other challenges the contract as a whole, either on a ground that directly affects the entire

3

agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Rent-A-Center, Inc., v. Jackson*, 561 U.S. 63, 70 (2010). "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Rent-A-Center, Inc.* 561 U.S. at 71.

### III. DISCUSSION

Defendant 777 argues that the Court should compel Plaintiffs to arbitrate their claims because the loan agreements included arbitration agreements ("Agreements") requiring arbitration for all claims arising under the contracts. (777 Mot. at 4, 7 [ECF No. 8-1.]) Defendant 777 further contends that the delegation provision contained in the arbitration agreements is enforceable and requires the arbitrator to address challenges to enforceability. (*Id*. at 7).

Plaintiff responds that Defendant 777 cannot enforce the arbitration agreement because 777 is not a party to the agreement. Oppo. at 4-5 [ECF No 13.]) Because 777 is not a party to the Agreements, Plaintiffs contend 777 could potentially only enforce the arbitration clause under the state contract law theory of equitable estoppel but the theory does not apply under the test in *Kramer v. Toyota Motor Corp*., 705 F.3d 1122, 1128 (9th Cir. 2013).  (*Id*.) Plaintiff further argues that (1) the Court should determine threshold issues of arbitrability, (2) the choice of law provision is unenforceable, (3) the arbitration agreements are unenforceable, and (4) Defendants have waived their right to compel arbitration by filing a motion to dismiss on the merits. (*Id*.)

#### 1. Application of Arbitration Clause to Defendant 777

The plain terms of the Agreements indicate that 777 Partners, while not signatories to the agreement, are intended third party affiliates. "An affiliate is normally understood as 'a company effectively controlled by another or associated with others under common ownership or control.'" *Revitch v. DIRECTV, LLC*., 977 F.3d 713, 717 (9th Cir. 2020). The Agreements state that all disputes arising from the Agreements must be pursued via

arbitration: "ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION." (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5). The definition of "Dispute" includes "all claims asserted by you individually against the Tribe, us and/or any of our employees, agents, directors, officers, governors, managers, members, parent company or **affiliated entities** (collectively, "related third parties"). (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5)(emphasis added). Plaintiffs' allegations in the Complaint support this conclusion. Plaintiff alleges that "Defendant ZOCA's entire business is run by Defendants 777 and TACTICAL, who operate their illegal payday lending scheme out of Miami, FL." (Compl. at ¶23). In addition, Plaintiff asserts that

> 27. Defendant 777 provides the employees and systems used to underwrite and approve the loans that are later ostensibly made by ZOCA.
>
> 28. Once Defendants TACTICAL and 777 have underwritten a proposed loan, they transmit that information to Defendant ZOCA where Defendant ZOCA then "funds" the loan. This is in name only, and intentionally designed to use ZOCA's status as a tribal entity to try to avoid liability for the scheme's unlawful lending practices. In actuality, Defendants TACTICAL and 777 have already approved the loans and merely tell Defendant ZOCA who is "approved."
>
> 29. Defendants TACTICAL, FINTECH and 777 provide all the capital to "fund" the loans to Defendants ZOCA and REDC.
>
> 30. All capital used for the lending scheme come from accounts held by Defendants TACTICAL, FINTECH, and 777, which are accounts that Defendants REDC and ZOCA have no access to or control to.

(Compl. at ¶¶ 27-30).

By executing the loan agreements, Plaintiffs entered contracts with Zoca who purportedly engaged multiple non-tribal entities to effectuate the transactions, including Defendant 777. Each of the Defendants performed a service associated with the funding of the personal loans. From this, it is apparent that 777 is an affiliate of Zoca and thus is bound by the terms of those Agreements.

Plaintiffs argue they are not challenging the terms of the agreement, but instead are challenging the conduct of the 777 Defendants for their hand in operating the illegal payday lending scheme, however this is a distinction without a difference. The "conduct" of the Defendants is directly related to the execution of the loan agreements that

contained the arbitration Agreements. Without the Agreements, there is no harm to Plaintiffs and no scheme to challenge, therefore the terms of the Agreements are the crux of Plaintiffs claims.

The 777 Defendants further argue that they are entitled to enforce the agreement to arbitrate based on equitable estoppel principles because Plaintiffs' claims are intertwined with the underlying contract. (Mot. at 6). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Comer v. Micor, Inc*., 436 F.3d 1098, 1101 (9th Cir.2006) (internal quotation marks and citation omitted). "[A] litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128.  Courts generally look to the law of the forum state to decide whether 777, as a nonsignatory, can compel arbitration. "Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract (citations omitted) and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Id*. at 1128-29 (citations omitted).

The present case involves 777, a nonsignatory, seeking to compel a signatory, Plaintiffs, to arbitrate its claims against the nonsignatory.  Under the facts as alleged 777 may enforce the arbitration agreements as non-parties under either equitable estoppel theory. Plaintiffs allege that nonsigntory 777 acts in concert with signatory Zoca and other Defendants to lure unsophisticated consumers into procuring unsecured personal loans with interest rates and other terms that violate RICO and California law. The resulting loan agreements contain terms which form the foundation of Plaintiffs claims. Therefore, nonsignatory 777 may compel arbitration because the claims are "intimately

6

founded in and intertwined with" the underlying contract and "the signatory alleges substantially independent and concerted misconduct by the non-signatory and another signatory and the allegations of interdependent misconduct are found in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128-29.

### 2. Delegation provision

Even if Defendant 777 can compel arbitration, Plaintiffs challenge the validity of the arbitration clause and claim that the court must determine the threshold issue of arbitrability. (Oppo. at 8-9). Defendant counters that the parties clearly and unmistakably agreed that an arbitrator would decide threshold issues relating to the enforceability of the Agreements. (Mot. at 9).

"The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center*, 561 U.S. at 68-69 (2010). Parties may agree to "arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id*. The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002)(citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)).

As noted above, the Agreements state that "ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION" and defines Dispute broadly to include "without limitation, (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Arbitration Provision, ("this Provision"), **the validity and scope of this Provision and any claim or attempt to set aside this Provision**." (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5)(emphasis added). In *Momot v. Mastro*, the Ninth Circuit held that similar language in an arbitration provision required arbitration of arbitrability. 652 F.3d 982, 988 (9th Cir. 2011). The delegation provision in Momot stated:

"[i]f a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement or **the validity or application of any of the provisions** of this Section 4, and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration." *Id*. (citing *Rent–A–Center*, 561 U.S. at 68)(emphasis added). Based on this language, the appellate court held that "the parties clearly and unmistakably agreed to arbitrate the question of arbitrability." *Id*. at 988. Similarly, the language in the present Agreements to arbitrate "the validity and scope of this Provision and any claim or attempt to set aside this Provision" is clear and unmistakable language which indicates an agreement to allow the arbitrator to determine the threshold issue of arbitrability.

Further support for this conclusion is the direction within the Agreements that the rules of the AAA or JAMS will bind the arbitrator. Generally, "incorporation of the AAA arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130. The Agreements state that disputes may be settled via arbitration with Judicial Arbitration and Mediation Services, Inc. (JAMS) or the American Arbitration Association (AAA) and that any arbitration would "adhere to and follow the Consumer Due Process Protocol of the AAA, which can be found at: http://www.adr.prd/, and the JAMS Minimum Standards of Procedural Fairness for consumer arbitration, which can be found at: http://jamsadr.com rules." (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5). Plaintiffs contend they are unsophisticated consumers therefore incorporation of these rules was not enough to put them on notice regarding the arbitration of arbitrability. The court in *Brennan* did not expressly hold that incorporation of the AAA rules was sufficient where unsophisticated parties are concerned, but did state that the holding should not be interpreted to "require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent." *Brennan*, 796 F.3d at 1130. Therefore, *Brennan* does not

compel the conclusion that inclusion of the AAA rules forecloses a finding that the parties intended to arbitrate arbitrability because they are "unsophisticated" consumers. *Id*.

Plaintiffs argue that even if there is a valid delegation agreement, it is unworkable and unconscionable because it requires the arbitrator to apply the laws of the Rosebud Sioux Tribe but Defendant has not shown that there is a body of general contract law under those laws that may be applied by the arbitrator. (Oppo. at 11). In response, Defendant 777 contends the choice of law provisions does not render the delegation provision unconscionable because the Rosebud Sioux Tribe has a body of law that includes a chapter on damages for breach of contract, citing the CODE OF THE ROSEBUD SIOUX TRIBE, Title 8, Ch. 7 (Damages for Breach of Contract), hosted by the National Indian Law Library at https://narf.org/nill/code/rosebudcode/index/html. (Reply at 5). Plaintiffs argument fails in light of Defendants citation to the governing provision of the Rosebud Sioux Tribe contract law provision.

### 3.  *Procedural and Substantive Unconscionability*

Plaintiffs challenge the Agreements on multiple grounds of unconscionability claiming that the Agreements are procedurally unconscionable because they were contracts of adhesion, and the Agreements are substantively unconscionable because the choice of law provision that dictates "the laws of the Rosebud Sioux Tribe" apply is an unreasonable prospective waiver of federal law as well as California state statutory protections against usurious loans. (Oppo. at 17).

Defendant counters that the loan Agreements are not procedurally unconscionable because Plaintiffs were not obligated to choose the loan product offered by Defendants, there was no oppression involved, and there was no surprise because the Arbitration Agreement was in bold font under a clear heading. (Reply at 8). The Agreements are also not substantively unconscionable as related to the choice of law provision because the Rosebud Sioux Tribe has a strong sovereign interest in having tribal laws govern the contracts that are entered into with an entity that is created under tribal law. (Reply at 5). Defendant claims that the choice of law provision is not a prospective waiver of Plaintiffs'

9

statutory rights because the Agreements do not expressly waive Plaintiffs federal statutory rights, and the 777 Defendants do not assert that Plaintiffs are barred from pursuing federal claims. (*Id*. at 6).

The party opposing arbitration has the burden of proving the provision is unconscionable. *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1099 (Ct. App. 4th 2002). An agreement is unconscionable under California law if it is both procedurally and substantively unconscionable. *Shroyer v. New Cingular Wireless*, 498 F.3d 976, 981 (9th Cir. 2007). "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Beco v. Fast Auto Loans*, 86 Cal.App.5th 292, 307 (Ct. Ap. 4th 2022). Procedural and substantive unconscionability do not need to be shown to the same degree but instead a court must evaluate them on a "sliding scale" where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to" conclude that the term is unenforceable and [c]onversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." *OTO, L.L.C. v Kho*, 8 Cal.5th 111, 125-26 (Cal 2019)(internal citations omitted).

Plaintiffs have not met their burden to demonstrate the Agreements are procedurally unconscionable. "A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.'" *Id*. at 126. "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.'" *Id*. "While California courts have found that 'the adhesive nature of the contract is sufficient to establish some degree of procedural unconscionability' in a range of circumstances, the California Supreme Court has not adopted a rule that an adhesion contract is per se unconscionable." *Poublon v. C.H. Robinson Co.,* 846 F.3d 1251, 1261 (9th Cir. 2017). Plaintiffs assert that the arbitration and delegation agreements are per se unconscionable as contracts of adhesion because

10

Zoca had the superior bargaining power as the loan provider and Plaintiffs were required to accept the terms of the arbitration agreements, including the delegation provisions, on a take-it-or-leave-it basis with no opt-out. However, even if it is a contract of adhesion, this does not make it per se unconscionable. Instead, a court must look to the method and manner by which a disputed provision is presented to the unsophisticated or weaker party. *Id*.

Courts have found procedural unconscionability where a Discover card holder received notice of binding arbitration in a bill stuffer. See *Szetela*, 97 Cal.App.4th at 1099. Unlike the putative class plaintiff in *Szetela*, Plaintiffs proactively sought the personal loans at issue on the internet and signed an acknowledgment of the terms of the agreements prior to the loans being funded. Under these circumstances, while Plaintiffs were required to "take-or-leave" the terms, they had the choice to use ZocaLoans or choose another loan provider. In addition, the arbitration language was not hidden but instead appeared in bold font with a heading in bold and all capitalized font. (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5)(emphasis added).

Similarly, the present Agreements are unlike employment contracts of adhesion where courts have found procedural unconscionability because the prospective employee was required to accept the arbitration provision as a condition of employment. *See Armendariz, v. Foundation Health Psychcare Services, Inc*. 24 Cal. 4th 83, 113 (2000). Courts look to the nature of the agreement when considering unconscionability, noting that an employment agreement concerns the ability of an individual to pursue gainful work. "With respect to preemployment arbitration contracts, we have observed that 'the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'" *OTO*, 8 Cal. 5th at 126 (citing *Armendariz*, 24 Cal.4th at 115). Here, the arbitration and delegation provisions in the Agreements were not a condition to employment but instead were conditions imposed on personal loans obtained via internet.

For the foregoing reasons, although the Agreements were offered on a "take-it-or-leave-it" basis, they were not procedurally unconscionable as a contract of adhesion.

"Substantive unconscionability examines the fairness of a contract's terms." *OTO*, 8 Cal.5th at 129. California courts have held that an agreement is substantively unconscionable where it is "overly harsh," "unduly oppressive," "unreasonably favorable," or "shock[s] the conscience."" *Poublon*, 846 F.3d at 1261.  Plaintiffs argue that the tribal choice-of-law provision is substantively unconscionable because it acts as an unreasonable prospective waiver of federal law protections as well as California state statutory protections against usurious loans. (Oppo. at 17). "[T]he Supreme Court has recognized that arbitration agreements that operate 'as a prospective waiver of a party's right to pursue statutory remedies' are not enforceable because they are in violation of public policy." *Gibbs v. Haynes Investments, LLC.*, 967 F.3d 332, 340 (Ct. App. 4th 2020). If "an arbitration agreement prevents a litigant from vindicating federal substantive statutory rights, courts will not enforce the agreement." *Id*. A "foreign choice of law provision, of itself, will not trigger application of the prospective waiver doctrine." *Dillon v. BMO Harris Bank*, 856 F.3d 330, 334 (Ct. App. 4th 2017).

The choice-of-law provision in the Agreements does not constitute an unreasonable prospective waiver of federal law protections. The terms of the Agreements state:

> **LAW THAT APPLIES**. The laws of the Rosebud Sioux Tribe ("Tribal law") will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by Tribal Law, and in the event of a bona fide dispute between you and use, Tribal law shall exclusively apply to such dispute.

(Patrick O'Daugherty Decl. Ex 1 at 3; Ex. 2 at 3)(emphasis added).

As noted above, the term Disputes is broadly defined to include "all U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement," and "all claims based upon a violation of any state or federal constitution, statute or regulation." (Patrick O'Daugherty Decl. Ex 1 at 5; Ex. 2 at 5).  Under the "Arbitration Provisions" clause, the Agreements state "[t]he arbitrator shall apply the laws of the Rosebud Sioux Tribe **that govern** this Agreement." (*Id*.)(emphasis added). The

Agreement includes a Sovereign Immunity clause that states "Because we and the Tribe are entitled to sovereign immunity, you will be limited as to what claims, if any, you may be able to assert against us." (Patrick O'Daugherty Decl. Ex 1 at 4; Ex. 2 at 4). Reading these provisions together indicates that Plaintiffs are not barred from bringing federal claims to arbitration, but instead, the arbitrator will apply laws of the Rosebud Sioux Tribe only to the extent they govern specific provisions, but otherwise, state and federal law will be applied. There is no express waiver of federal statutory claims.

However, that finding alone does not preclude a finding of prospective waiver. Where a choice of law provision prohibited the application of "any law other than the law of the Cheyenne River Sioux Tribe of Indians to this Agreement" a California appellate court found that viewing the choice of law provision along with the choice of forum provision resulted in the conclusion that the language "almost surreptitiously waives a potential claimant's federal rights through the guise of a choice of law clause" and "flatly and categorically renounce[s] the authority of the federal statutes." *Dillon*, 856 F.3d at 334. Here, the Agreement does not appear to contain a choice of forum clause. Without the tandem choice of law and choice of forum clauses, it is uncertain whether "the foreign choice of law would preclude otherwise applicable federal substantive statutory remedies" therefore, "the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies." *Dillon*, 856 F.3d at 334. Accordingly, the choice of law provision does not render the Agreement or delegation provision substantively unconscionable for purposes of the present motion.

Plaintiffs further contend that the choice of law provision violates California's choice of law framework because the laws of the Rosebud Sioux Tribe have no substantial relationship to either Plaintiffs who are both California residents and resided in California when they entered the contracts at issue. (Oppo. at 12). Because California has a strong public policy against unfair competition and debt collection, and California has a materially greater interest than the tribe in the outcome of this dispute, California law should apply to the loan agreements and the arbitration agreements under California's'

13

choice of law framework according to Plaintiffs. (*Id.* at 13-14). Defendants counter that the Tribe has a substantial interest in having Tribal Law govern the contracts that are entered into with an entity that is created under Tribal Law. (Reply at 5).

"Under California's choice of law rules, we must first determine whether the selected state 'has a substantial relationship to the parties or their transaction, or ... whether there is any other reasonable basis for the parties' choice of law.'" *Delisle v. Speedy Cash*, 818 Fed.Appx 608, 611 (9th Cir. 2020).  A court may not enforce the choice of law provision if (1) the substantive law of the tribe is "contrary to a fundamental policy of California" *and* (2) California has a "materially greater interest" than the tribe in resolving the issue. *Washington Mutual Bank v. Superior Court*, 24 Cal.4th 906, 917 (2001)(emphasis added).  California "'has a strong public policy against usury, that is, the charging and receiving interest on the loan or forbearance of money in excess of the rate allowed by law.'" *G Companies Management, LLC v. LREP Arizona, LLC*, 88 Cal.App.5th 342, 354 (Ct. App. 3rd 2023).

The Rosebud Sioux Tribe has a substantial relationship to the agreements in question because ZocaLoans is a business formed under the Rosebud Tribal Law. The loans were entered into with Plaintiffs who were California residents, but who accessed the loans via the internet. ZocaLoans does not have any storefronts in California. Although Plaintiffs challenge the interest rate and loan process as violative of California usury laws, "California 'has no strong public policy against a particular rate of interest so long as the charging of that rate is permitted by law to the specific lender.'" *G Companies Management*, 88 Cal.App.5th at 354. Plaintiffs have failed to show that the substantive law of the Rosebud Sioux Tribe is contrary to California's policy on usury, or that the arbitrator will not apply California law to those claims, therefore, the choice of law provision does not violate California's choice of law framework.[1]

---

[1] Plaintiffs contend that the Motion to Compel Arbitration is waived in light of their filing of the Motion to Dismiss arguing that Defendants are acting inconsistently with the right to arbitrate by seeking a decision on the merits. (Oppo. at 20). Defendants here have not engaged in delay or strategic acts that have prejudiced Plaintiffs by filing both a Motion to Compel Arbitration and a Motion to

## IV. Conclusion and Order

For the foregoing reasons, the Court **GRANTS** Defendant 777's Motion to Compel Arbitration [ECF No. 8] and **DENIES** Defendant 777's Motion to Dismiss [ECF No. 9] as moot.

**IT IS SO ORDERED.**

Dated: August 11, 2023

_____
Hon. M. James Lorenz
United States District Judge

---

Dismiss, therefore the Court finds no waiver of arbitration by Defendants. *See Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016).